[Cite as *State v. Pierce*, 2014-Ohio-1505.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Willam B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| KYLE D. PIERCE | : | Case No. 13-CA-00008 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Perry County Court
of Common Pleas, Case No.
12-CR-0091


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     April 7, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

NANCY NASH RIDENOUR                STEVEN P. SCHNITTKE
Assistant Prosecuting Attorney        Schnittke & Smith
111 North High Street, P.O. Box 569   114 S. High Street, P.O. Box 536
New Lexington, OH 43764               New Lexington, OH 43764

*Baldwin, J.*

{¶1}    Defendant-appellant Kyle Pierce appeals his conviction and sentence from the Perry County Court of Common Pleas on one count of unlawful sexual conduct with a minor. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On November 16, 2012, the Perry County Grand Jury indicted appellant on one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04 (A) and (B)(1), a felony of the fourth degree. At his arraignment on December 7, 2012, appellant entered a plea of not guilty to the charge.

{¶3}    On May 29, 2013, the parties filed a Stipulation that was signed by appellant. The parties stipulated that, on or about January 27, 2012 through February 10, 2012, the alleged victim was 13 years old and appellant was 20 years old, that the alleged victim was not appellant's spouse, and that the alleged victim and appellant engaged in sexual conduct on or about January 27, 2012 through February 10, 2012. Thereafter, a jury trial commenced on such date.

{¶4}    At the trial, the alleged victim, C.S., testified that she was in eighth grade during January and February of 2012 and attended Fairfield Union Junior High. She testified that she met appellant through her cousin Drake who was friends with appellant. C.S. testified that during January and February of 2012, she had a Facebook page and that on her profile page, she listed her school as Fairfield Union Junior High. According to C.S., she and appellant had conversations on Facebook through instant

messaging. C.S. testified that she talked with appellant about going to school, doing chores at home and other matters.

{¶5}    Appellant and C.S. arranged to meet on a weekend during the above time frame because C.S.'s mother worked on Fridays, Saturdays and Sundays in the morning.  C.S. testified that she asked her mother if she could go and stay with her friend Autumn and that her mother consented.  C.S. indicated that she told her mother she was going to be at Autumn's for the whole weekend and gave her mother the telephone number of appellant's mother rather than Autumn's mother.  After her mother left for work, C.S. got her clothes together and walked down to a gas station where she was picked up by appellant. When appellant picked her up, John Brickhouse and his girlfriend Jennifer were with him.  The four then went to Brickhouse's house and spent the night. C.S. testified that she did not have sex with appellant on the Friday night.

{¶6}    When asked during direct examination if she ever told appellant her age, C.S. testified that she told him that she was 13 years old. She denied that she initially told appellant that she was a different age.  She also testified that when appellant and C.S. went to appellant's mother's house, appellant told his mother that C.S. was 18 years old. According to her, appellant's mother had asked about C.S.'s age. C.S. agreed that she never corrected appellant in front of his mother and testified that when she asked appellant why he told his mother she was 18, he said that his mother would get mad if she knew C.S. was younger than 18 years old. C.S. also indicated that she was afraid to tell appellant's mother that she was only 13 years old.  C.S. also testified that the two of them had sex that night at Brickhouse's house.

{¶7}    After that weekend, appellant and C.S. continued instant messaging back and forth and arranged a second meeting the beginning of February of 2012.  The two had sex again. C.S. testified that she never told appellant's parent's or friends that she was 18 years old, but that she tried to tell John Brickhouse that she was 13 years old. When appellant came into the room, the conversation ended. According to C.S., Brickhouse "had somewhat of an idea" how old she was. Trial Transcript at 76. While C.S. and appellant arranged another meeting for the following weekend, C.S.'s mother became aware of what was happening. When asked, C.S. testified that she never told appellant what grade she was in but that she discussed going to school and doing chores at home with him during their Facebook conversations.

{¶8}    On cross-examination, C.S. testified that she tried to tell John Brickhouse in private about her age because she thought that he should know but  believed  that if she tried to talk to him in front of appellant, appellant would stop her. She testified that she used to smoke cigarettes and would take them from her mother or from people older than her who smoked. C.S. also testified that she met appellant's grandmother and that his grandmother never asked her how old she was and she never said. She admitted that she never told John Brickhouse, Jennifer, or anyone in appellant's family how old she was until the night that her mother caught her. She admitted on cross-examination that she never told them that she was 13, 16 or 18 years old and that appellant was the only one who actually knew that she was 13. She also admitted that she lied to her mother about her whereabouts for the three weekends.

{¶9} On redirect, C.S. testified that she did not tell anyone else her age because she was worried that she would not be able to be with appellant. She again testified that appellant knew her age.

{¶10} At the trial, John Brickhouse testified that appellant used to live with him and lived with him during the end of January through the beginning of February of 2012. He testified that he had a prior conviction for gross sexual imposition and was a registered sex offender. Brickhouse testified that he had communicated with C.S. on Facebook and that her Facebook page stated that she was 18 and still in junior high. He testified that C.S. told him that she was 16 years old, but that when he saw her picture on Facebook, she looked younger than 16. Brickhouse also testified that when he went with appellant during the last weekend of January of 2012 to pick C.S. up, she appeared to be 13 or 14 years old. According to Brickhouse, he told appellant that he did not think that C.S. was 18 and was at most 15 years old and that C.S. had told him that she was 16, but that appellant kept telling him that C.S. was 18 years old. Brickhouse testified that C.S. did not talk like she was 18 and acted in an immature manner. He testified that she "slipped up by revealing that she's still in junior high, eighth grade or something like that" and that no one else caught the slip but him. Trial Transcript at 100. Appellant was not present when she said she was in eighth grade, but Brickhouse testified that he told appellant what C.S. had said on multiple occasions.

{¶11} Brickhouse further testified that when he went over to appellant's house, appellant introduced C.S. to his family and that both appellant and C.S. told them that she was 18 years old. He also testified that he was scared when he learned C.S.'s

mother had found out the deception because he was on parole and was not permitted to be around anyone younger than 18 years old.

{¶12} On cross-examination, Brickhouse testified that when he first started talking to C.S. on Facebook, her profile said that she was 18 years old. He testified that he observed her smoking cigarettes but never saw her purchase any.

{¶13} Sergeant Daniel Corder of the Perry County Sheriff's Office testified he was called to investigate an alleged rape. A caseworker told him C.S.'s name and told him that C.S. had had consensual sex with a 20 year old male. The male was appellant. Sergeant Corder testified that he talked with C.S. on February 10, 2012 and that she looked young and was wearing glasses and a T-shirt which he testified were appropriate for her age. When he went to appellant's house, both appellant and his mother told him that C.S. had said that she was 18 years old.

{¶14} Sergeant Corder was asked if he had a chance to observe C.S.'s Facebook profile page. He testified that he did and that her personal information stated that she was 18, but that it also said that she attended Fairfield Union Junior High School. He testified that you had to be 18 years of age to obtain a Facebook account, but that juveniles often lied about their age in order to obtain one. The Sergeant further testified that when he was interviewing C.S., she seemed very immature to him.

{¶15} Appellant testified at trial in his own defense. He testified that his mother and grandmother asked C.S. how old she was and that she told them that she was 18 years old and would be 19 in a few weeks. He testified that when he later found out how old C.S. was, he started freaking out. He also testified that he asked C.S. when she was getting an ID and that she told him that she was getting one in a couple of

weeks so that she could buy her own cigarettes. He denied that C.S. ever told him that she was 13 or 16 years old. He testified that she told him that she was 18 years old and that he saw her age listed as 18 on Facebook. Appellant further testified that he felt that C.S. had tricked him. He also testified that C.S. told him that she had smoked marijuana with her mother and her mother's boyfriend.

{¶16} On cross-examination, appellant denied that C.S. ever talked about school during their conversations, but also testified that C.S. told him that she was a senior in high school getting ready to graduate. He then admitted that he had conversations about school with C.S. and testified that Fairfield Union Junior High was listed on her Facebook page. Appellant denied that C.S. acted immaturely or in a childish manner except when she was messed up. He testified that he "didn't think she was underage though because I know a lot of people that are older than me that looks like they are 12." Trial Transcript at 149. When he was asked why he questioned C.S. about her age, appellant testified that a lot of people liked to lie about their age and he had to make sure that C.S. was 18 years old. The following is an excerpt from appellant's testimony:

{¶17} "Q: You stated in your testimony that after the first weekend, you were speaking with her on the phone or texting, and you – your own words, you stated that you were trying to find out how old she was?

{¶18} "A: I wanted to hear it from her mom.

{¶19} "Q: Why would you want to hear it from her mom if you didn't question how old she was?

{¶20} "A: Because my mom told me I should figure out her actual age.

{¶21} "Q: Okay. So other people had some feelers out that perhaps she wasn't as old as what she was saying, is that true?

{¶22} "A: Well, my mom didn't really second guess it either. She said --

{¶23} "Q: I'm going to stop you. Your mom told you, yes or no, that you should probably find out how old she is, yes or?

{¶24} "A: Yes.

{¶25} "Q: And that's when you were trying to do - - after you had already met her, you were questioning how old she was?

{¶26} "A: Yes."

{¶27} Trial Transcript at 151-152.

{¶28} Appellant admitted that he did have a question about C.S.'s age.

{¶29} Linda Pierce, appellant's grandmother, testified that when she asked C.S. how old she was during their first meeting, C.S. told her that she was 18 years old and was graduating that spring. She testified that she saw C.S. smoke her own cigarettes and that, the two times she saw C.S., she had no reason to believe that she was not 18 years old. According to her, C.S. had her boobs hanging out, had makeup on and had her hair done like 18 year old girls do. She also testified that C.S. told her that she smoked and drank with her mother.

{¶30} On cross-examination, Linda Pierce testified that she asked C.S. how old she was because she wanted to know where C.S.'s mother was. She told appellant that she wanted C.S. out of there because she did not like her "boobs flopping out and sitting around there going outside smoking.." Trial Transcript at 165.

{¶31} Sheri Pierce, appellant's mother, also testified at trial. She testified that when she asked C.S. how old she was, C.S. told them that she was 18 years old and she did not second guess her. She testified that C.S. looked 18 because she had her hair done, was wearing makeup and showed cleavage. She further testified that she figured that C.S. was 18 because she was smoking and had her own cigarettes.

{¶32} On cross-examination, Sheri Pierce denied that, after the first weekend, she told appellant that he better find out how old C.S. was, but then testified that she guessed that she did make such a statement. When asked why she did, she testified that it was because of the way girls dressed and acted. She denied having an inkling that C.S. was not as old as she claimed. Sheri Pierce testified that she had a 13 year old daughter and that her daughter did not dress like C.S. She also testified that she might have questioned C.S.'s age after the first time she met her, but did not recall.

{¶33} At the conclusion of the evidence and the end of deliberations, the jury, on May 29, 2013, found appellant guilty of unlawful sexual conduct with a minor. Pursuant to a Judgment Entry filed on July 31, 2013, appellant was sentenced to ten (10) months in prison. Appellant also was labeled a Tier 2 Sex Offender.

{¶34} Appellant now raises the following assignment of error on appeal:

{¶35} TRIAL COUNSEL WAS INEFFECTIVE IN PROVIDING ASSISTANCE TO DEFENDANT AT HIS TRIAL.

I

{¶36} Appellant, in his sole assignment of error, argues that he received ineffective assistance of trial counsel. We disagree.

{¶37} Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standard in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis: First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675, 1998-Ohio-343, 693 N.E.2d 267. Furthermore, both prongs of the *Strickland* test need not be analyzed if the claim of ineffective assistance can be resolved under one prong. *State v. Doss,* 4th Dist. Gallia No. 09CA20, 2012–Ohio–883, ¶ 16, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52.

{¶38} Appellant was convicted of sexual conduct with a minor, a violation of R.C. 2907.04(A), which states: "No person who is eighteen years of age or older shall engage in sexual conduct with another who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." The definition of "recklessness" is found in R.C. 2901.22(C), which states:

{¶39}  "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶40}  Appellant concedes that trial counsel attempted to show that the victim in this case  represented that she was 18 years old, but argues that trial counsel was ineffective is failing to present how the victim physically appeared on each occasion that she was with appellant. He contends that trial counsel, therefore, failed to properly develop his defense that he was not reckless. We disagree.

{¶41}  As is set forth above, there was testimony from both Linda Pierce, appellant's grandmother, and Sheri Pierce, his mother, that C.S. had makeup on, had her hair done, and was showing cleavage. Moreover, the victim in this case testified at trial and the jury had the chance to view her in person. Thus, there was testimony as to C.S.'s physical appearance.

{¶42}  Moreover, we find that appellant was not prejudiced by such alleged ineffectiveness because there was overhwelming evidence produced at trial to show appellant was reckless with regard to the victim's age. As is stated above,  C.S.'s Facebook page stated that she attended junior high. She herself testified that she told appellant she was 13 years old. During her Facebook conversations with appellant, she talked about school and doing chores at home where she lived with her mother. John Brickhouse testified that  C.S. had told him that she was 16 and that, when he saw her picture on Facebook, she appeared even younger. Upon meeting her in

person, he thought that she appeared to be 13 or 14 years old and told appellant that he thought that she was 15 years old at most. He also testified that C.S. was childish and immature. Appellant admitted that after the first weekend, he was attempting to find out how old C.S. was, indicating that he himself had concerns about her age. Appellant further testified that after first meeting C.S., his mother questioned how old she was. Appellant's mother testified that she wondered about C.S.'s age because she wondered why C.S. was away from home three weekends in a row. Appellant's grandmother also questioned C.S.'s age. In short, there was overwhelming evidence of recklessness.

{¶43}    Appellant's first assignment of error is, therefore, overruled.

{¶44}    Accordingly, the judgment of the Perry County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Farmer, J. concur.